IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. CR-11-79-R |
| AUBREY DEAN ELWOOD, | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant's Motion to Reconsider (Doc. 45) the Court's October 23, 2017 order (Doc. 38) offsetting his Inmate Trust Account $1,297 to pay outstanding restitution. The Court has also considered Defendant's affidavit, filed directly after the Court denied his motion for appointment of counsel, in support of his motion to appoint counsel to challenge the Court's offset. Doc. 42. The main issue is whether the Court's November 8, 2011, judgment (Doc. 23) impermissibly delegated the preparation of a payment schedule to the Bureau of Prisons ("BOP") in violation of the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3664(f)(2). The Court hereby denies the Motion for the following reasons.

### I. Background

On May 4, 2011, Defendant Aubrey Elwood pled guilty to one count of theft of public funds, 18 U.S.C. § 641, and one count of aggravated identity theft, 18 U.S.C. § 1028A. Docs. 14–16. The pre-sentence investigation report stated that Defendant maintained a "total debt balance of $1,864.00, all of which [was] past due" and he could not afford to pay a fine. Doc. 21, at 28. On November 8, 2011, the Court sentenced him to

1

120 months incarceration, without a fine, and waived interest on his restitution due to "inability to pay." Judgment, Doc. 23, at 5. It ordered, in light of "the defendant's ability to pay," "[l]ump sum payment of [a] $200.00 special assessment fee and $1,847.90 restitution due immediately." *Id.* at 6. The Court also set a payment schedule of "the greater of $100 per month or not less than 10% of the defendant's gross monthly income," due only "[i]f restitution is not paid in full at the time of release from confinement." *Id.* To encourage speedy restitution payments, the Court "recommend[ed] that [Defendant] participate in the Inmate Financial Responsibility Program" ("IFRP"). Sentencing Transcript, Doc. 22, at 8.[1]

Defendant is incarcerated at Sheridan Federal Correctional Institution ("FCI") in Oregon. He participated in the IFRP between 2012 and 2014, paying the $200 special assessment fee and $550 of his restitution, until he stopped making payments in April, 2014.[2] *See* Doc. 37-4, at 1. In July, the Government requested that Sheridan FCI encumber his Inmate Trust Account for failure to pay restitution in accordance with the Court's judgment. Doc. 37-2. Then in September, the Government moved to offset his Inmate Trust

---

[1] I'm not imposing a fine. I do recommend that you participate in the Inmate Financial Responsibility Program, as well as the Residential Drug Abuse Program. You are ordered to make restitution of $1,847.90 to the Social Security Administration, which shall be due immediately.
. . .
You are ordered to pay the United States a special assessment of $100 as to each count, for a total of $200, which shall be due immediately.
Sentencing Transcript, Doc. 22, at 8–9.

[2] Defendant claims he stopped making payments because Unicor, otherwise known as Federal Prison Industries, closed in 2015 and all inmates were laid off. *See* Doc. 42, at 2–3; *Unicor*, FEDERAL BUREAU OF PRISONS (April 6, 2018), https://www.bop.gov/inmates/custody_and_care/unicor.jsp. Defendant also was allegedly attempting to save money for other obligations, including two other restitution orders in Garfield County, Oklahoma. *Id.* at 2–4.

Account in the amount of $1,297 to cover the remaining restitution, which the Court granted on October 23, 2017. Docs. 37 and 38. Defendant requested appointment of counsel to challenge the offset order, which the Court denied. Doc. 41. On March 27, 2018, Defendant filed this reconsideration motion. Doc. 45.

## II. Discussion

Defendant seeks reconsideration of the Court's October 23, 2017 order (Doc. 38) offsetting his Inmate Trust Account to pay $1,297 in outstanding restitution. A motion for relief from a "final judgment, order, or proceeding" under Federal Rule of Civil Procedure 60(b)(6) "must be made within a reasonable time."[3] Defendant is entitled to relief for "any . . . reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The word "any" is somewhat misleading, though, because 60(b)(6) relief is rare:

> Rule 60(b)(6) relief from judgment is within the district court's discretion and "warranted only in exceptional circumstances." *Van Skiver v. United States,* 952 F.2d 1241, 1243 (10th Cir. 1991); *see also Cashner v. Freedom Stores,* 98 F.3d 572, 579 (10th Cir. 1996) ("a district court may grant a Rule 60(b)(6) motion only in extraordinary circumstances and only when necessary to accomplish justice."). We will reverse the district court's determination only if there is "a complete absence of reasonable basis" leaving us certain that the district court's decision is wrong. *Id.*

*Pyeatt v. Does*, 19 F. App'x 785, 788 (10th Cir. 2001) (unpublished). The Government argues that Defendant's Motion is "unreasonable and untimely" in light of Defendant's failure to respond to the Government's offset motion, "acquiesce[nce]" to the offset, and

---

[3] The Court's offset order is not a "clerical mistake" under Rule 60(a), nor does this issue seem to satisfy any of the enumerated Rule 60(b) reasons for "relief from a final judgment, order, or proceeding." Fed. R. Civ. P. 60.

3

delay in filing his reconsideration motion. Doc. 49, at 12 (citing Defendant's "Answer," Doc. 39, to the Court's Order Directing Offset of Inmate Trust Account).[4]

The Court declines to find unreasonable a pro se defendant's reliance on his former public defender and Sheridan FCI staff—who appear to have been actively working on his behalf to resolve this restitution issue—and demonstrated unfamiliarity with the Court's procedures. *See* Doc. 37-3; Doc. 39 (citing a letter from Defendant's former public defender clarifying that he was no longer representing Defendant); Doc. 42, at 2, 4, 6 (Defendant failed to respond because "no one ever told [him he] could object or respond."); Doc. 51, at 10. Nor is a five-month delay between the offset and motion unreasonable, particularly given that Defendant may not have even received the Court's offset order until the week before he filed an affidavit contesting this issue. *See* Doc. 51, at 3, 9.

Nonetheless, Defendant has not shown that revoking the offset of his Inmate Trust Account is "necessary to accomplish justice." *Cashner*, 98 F.3d at 579. The MVRA states that "the court shall, pursuant to section 3572, specify in the restitution order the manner in which, *and the schedule according to which*, the restitution is to be paid" and consider various factors related to the defendant's finances. 18 U.S.C. § 3664(f)(2) (emphasis added). Section 3572(d) contains various provisions stressing to district courts that restitution should be ordered as soon as practicable. Defendant's motion concerns whether the Court's order to offset his trust account—once he had earned enough money to pay restitution—violated the rule against delegation "with respect to payment schedules for

---

[4] Defendant's letter is better construed as a plea for help from a mentally unstable defendant than one from a defendant "acquiesc[ing]" to full payment of the restitution he owes.

4

restitution." *United States v. Overholt*, 307 F.3d 1231, 1256 (10th Cir. 2002).

The parties unduly focus on the Ninth Circuit case, *Ward v. Chavez*, 678 F.3d 1042, 1049–51 (9th Cir. 2012), which Defendant's correctional counselor at Sheridan FCI cited to justify not requiring from Defendant continued restitution payment. *See* Doc. 37-3. The Government rightly notes that Defendant is not subject to the Ninth Circuit's jurisdiction, even while incarcerated in Oregon. *See* Doc. 37, at 9. The Court never transferred its jurisdiction to monitor the terms of Defendant's confinement or post-incarceration conditions. Without such a transfer, "[c]riminal jurisdiction over a state's inhabitants remains with the respective states and territories under whose jurisdiction the prisoners were originally sentenced." *Claypool v. McKinna*, 3 F. App'x 750, 752 (10th Cir. 2001) (unpublished) (quoting *Blango v. Thornburgh*, 942 F.2d 1487, 1490 (10th Cir. 1991)). This is beside the point, however, because the main Tenth Circuit case on this restitution-delegation issue, *Overholt*, 307 F.3d 1231, largely mirrors *Ward*.

In *Overholt*, the district court ordered an indigent defendant to pay immediate restitution, and "[a]ny amount not paid immediately shall be paid while in custody through the Bureau of Prisons' Inmate Financial Responsibility Program." *Id.* at 1254–55. The Tenth Circuit reversed the restitution award as an MVRA violation. It reasoned that "[t]he district court well knew that [the defendant] could not immediately pay the full amount of the restitution award. Thus, it was essentially delegating the preparation of a payment schedule to the Bureau of Prisons and the probation office." *Id.* at 1255. The court then "remand[ed] for the sole purpose of establishing a schedule for [the defendant's] payment of the amount of restitution previously awarded." *Id.* at 1256.

Defendant raises a difficult issue. Although the Court did not explicitly delegate payment-schedule authority to the BOP as in *Overholt*, it did order a $200 special assessment and $1,847.90 in restitution "due immediately," despite knowledge that Defendant could not pay it immediately; he reported no assets and $1,864 in debt. Judgment, Doc. 23, at 6; *see* Presentence Investigation Report, Doc. 21, at 28. Perhaps the BOP could have interpreted the judgment to allow it to set up a mandatory installment plan or, alternatively, because restitution was "due immediately," maybe the BOP could have required that every dollar he made through Sheridan FCI's Unicor program immediately help pay restitution—but neither the judgment nor sentencing expressly provided for such discretion, and both scenarios likely would have violated the Tenth Circuit's *Overholt* decision. *See Overholt*, 307 F.3d at 1256 ("[W]e see no room for delegation by the district court with respect to payment schedules for restitution."); Judgment, Doc. 23, at 6; Sentencing Transcript, *United States v. Elwood*, No CR-11-79-R, Doc. 22, at 8–9; *see also United States v. Lowe*, 220 F. App'x 831, 832–33 (10th Cir. 2007); *United States v. Bowen*, 225 Fed. App'x 765 (2007) (unpublished).

Instead, Defendant voluntarily participated in the IFRP between 2012 and 2014 and paid off the $200 special assessment fee and $550 of his restitution. *See* Doc. 37-4, at 1; *United States v. Gunning*, 401 F.3d 1145, 1150 (9th Cir. 2005) (quoting 28 C.F.R. § 545.11) ("[T]he BOP, like the probation office, has expertise in the payment area. That has wisely induced it to create the IFRP procedure whereby the BOP will 'help [the] inmate develop a financial plan' and will then 'monitor the inmate's progress' in meeting the terms of that plan."). *Compare Overholt*, 307 F.3d at 1255 ("Any amount [of restitution] not paid

immediately *shall be paid* while in custody through the Bureau of Prisons' Inmate Financial Responsibility Program") (emphasis added), *with United States v. Elwood*, Sentencing Transcript, Doc. 22, at 8 ("I do *recommend* that you participate in the Inmate Financial Responsibility Program") (emphasis added). When Defendant stopped making payments, the Government requested that Sheridan FCI encumber his Inmate Trust Account for failure to pay restitution. Doc. 37-2. Then the Government moved to offset his Inmate Trust Account in the amount of $1,297 to cover the remaining restitution, which the Court granted. Docs. 37 and 38. At that point, unlike when the Court sentenced him, he could afford to pay restitution in full.

Thus, while Defendant reasonably argues that the Court implicitly delegated his restitution payment schedule to the BOP by ordering restitution from an indigent defendant "due immediately,"[5] the offset was lawful by the time Defendant challenged the Court's restitution order. Judgment, Doc. 23, at 6. In other words, Defendant's only available remedy—an amended order that either (1) re-imposes immediate restitution payment based on Defendant's updated finances or (2) sets a payment schedule[6]—is moot because

---

[5] *See* Defendant's Motion for Reconsideration, Doc. 45, at 1–4. The Government's arguments to the contrary distort the facts and relevant precedent and ignore the Tenth Circuit's *Overholt* decision, 307 F.3d 1231 (10th Cir. 2002). The Court only set up an installment plan for *after* Defendant's "release from confinement," not for *during* his incarceration. Judgment, Doc. 23, at 6. And while the Court technically "assessed the defendant's ability to pay," the pre-sentence report made clear that Defendant was indigent and unable to pay $2,047.90 immediately. Doc. 21, at 28. Further, the Government's reliance on *Savage v. Denham*, No. 14-CV-02552-GPG, 2014 WL 6617112, at *3 (D. Colo. Nov. 20, 2014) and *United States v. Martinez*, 812 F.3d 1200, 1203 (10th Cir. 2015), is unpersuasive—those judgments did not require immediate restitution payment like in this case.

[6] Defendant argues that the Government "cannot enforce a Restitution Order beyond the monthly payment schedule set out in . . . [the] 'Special Instructions'" portion of his judgment. Doc. 45, at 7. However, that special instruction only set a payment schedule for post-incarceration restitution payments. The Government can enforce immediate payment of restitution by the Court's original order under the MVRA. *See* 18 U.S.C. § 3572(d)(1) ("A person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless, in the interest of justice, the court provides for

Defendant was able to pay restitution "due immediately." *Id.*; *see also* 18 U.S.C. §§ 3572(d), 3664(n) ("If a person obligated to provide restitution . . . receives substantial resources from any source . . . during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed."); *United States v. Martinez*, 812 F.3d 1200, 1207–08 (10th Cir. 2015) (citing *United States v. Ekong*, 518 F.3d 285, 286 (5th Cir. 2007) (per curiam)) (approving of the Government's argument for garnishment in *Ekong* that "the judgment required immediate payment of the full restitution amount, requiring installments only if the defendant failed to pay the full amount by the time she began supervised release").

Defendant has not justified reimbursement of the $1,297 in his account, a new restitution payment schedule, or a new sentence in light of the collateral consequences from the Court's offset order.[7] Accordingly, the Motion (Doc. 45) is hereby DENIED.

IT IS SO ORDERED this 19th day of April, 2018.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

payment on a date certain or in installments."); *see also United States v. Lemberger*, 673 F. App'x 579, 580 (7th Cir. 2017) (unpublished) (quoting 18 U.S.C. § 3664(m)(1)(A)) ("[T]he [BOP's Inmate Financial Responsibility] program and the government's ability to collect restitution are not mutually exclusive. A restitution order 'may be enforced by the United States in the manner provided for' in 18 U.S.C. §§ 3571–3574 and §§ 3611–3615 or 'by all other available and reasonable means.'").

[7] A motion for reconsideration is an improper means to challenge a criminal sentence or seek "[re]consideration of the 12 months additional time [Defendant] is now serving as a result of the government's" offset. Doc. 45, at 8; *see also* Doc. 51, at 10–11.